CLOTILDE HERNÁNDEZ LÓPEZ, recurrente, *v.* COMISIÓN IN-DUSTRIAL DE PUERTO RICO, ETC., demandada; EVANGELIO SALGADO, obrero lesionado.

*Número:* O-71-239      *Resuelto:* 13 de diciembre de 1972

*P. Roldán Figueroa* y *José F. Vázquez O'Neill,* abogados del recurrente; *Eduardo Cuchí Coll,* abogado de los herederos del obrero occiso.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Es éste un recurso de revisión tramitado a tenor con el Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 12. Debemos revisar una Resolu-

ción de la Comisión Industrial mediante la cual se declaró patrono no asegurado al recurrente.

De la síntesis que de las declaraciones de los testigos hizo la propia Comisión Industrial en su Resolución de 4 de marzo de 1971 surge lo siguiente. El recurrente tenía a la fecha de los hechos (año 1965) 67 años de edad. Para aquella fecha ya se había retirado de la agricultura porque por órdenes del médico no podía hacer trabajos físicos fuertes. Hacía cinco años que vivía del Seguro Social. Antes de eso tenía cuatro cuerdas de caña, las cuales destruyó cuando se retiró de la agricultura como negocio. Le quedaron dos cuerdas de café, fruto que recogía él mismo con la ayuda de su familia. Para la fecha de los hechos ya no alquilaba ni contrataba obreros ni peones. Anteriormente, cuando cultivaba las cuatro cuerdas de caña como negocio, tenía la póliza del Fondo del Seguro del Estado. Cuando se retiró de la agricultura y cuando cesó de emplear trabajadores cesó también de comprar dicha póliza.

■ En cuanto a los hechos específicos del caso, surge que el occiso, Evangelio Salgado, era un vecino y amigo del recurrente de alrededor de 15 años. A veces, cuando los palos de aguacate parían, una vez al año, Evangelio tumbaba aguacates en la propiedad del recurrente y ambos se los repartían de por mitad. Se trataba de una operación familiar y no de una operación comercial. Si el año del accidente los aguacates se hubiesen vendido se estima que le hubiesen tocado $3.00 a cada uno. El recurrente le había dado permiso a Evangelio para ello pero el día de las hechos, un domingo, ignoraba que Evangelio estuviese tumbando aguacates. Ese día Evangelio se cayó de un árbol y murió como consecuencia de los golpes recibidos.

El testigo Pablo Alvarado Colón, testigo de los demandantes, declaró que Evangelio "se daba sus cervecitas." Se determinó por el Instituto de Medicina Legal de la Escuela de Medicina de la Universidad de Puerto Rico que cuando el

occiso murió, el nivel de alcohol en su sangre debió ser entre el 20 al 26 centésimas del uno por ciento de alcohol por peso, lo cual lo colocaba "bajo la influencia del alcohol." Es de notarse que la Ley de Vehículos y Tránsito dispone que si en la sangre de una persona hay quince centésimas del uno por ciento, o más, por peso de alcohol, debe presumirse que la persona "estaba bajo los efectos" del alcohol. 9 L.P.R.A. sec. 1041(b)(3).

■ Es cierto que el Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 12, dispone que las revisiones de las decisiones de la Comisión Industrial solamente podrán concederse sobre cuestiones de derecho o de apreciación de prueba cuando ésta sea de carácter pericial, pero en el caso que nos ocupa la controversia gira sobre si el recurrente es o no un patrono no asegurado y ésta es una determinación de hecho y de derecho, la cual es revisable como una cuestión de derecho. *Gallart, Admor.* v. *Comisión Industrial,* 89 D.P.R. 581, 589 (1963); *Arraiza Iglesia* v. *Comisión Industrial,* 85 D.P.R. 14 (1962); *Romero* v. *Comisión Industrial,* 73 D.P.R. 805, 812 (1952). En este último caso el Tribunal determinó que aunque la actividad en cuestión producía alguna ganancia económica a la recurrente, dicha actividad no era habitual o regular sino meramente esporádica y revocó la resolución de la Comisión Industrial mediante la cual se había determinado que la recurrente estaba obligada a asegurarse.

■ En este caso los hechos demuestran que la actividad que llevaba a cabo el occiso cuando ocurrió el accidente era una de naturaleza accidental o casual y no formaba parte de ningún negocio del recurrente. Un accidente sufrido por una persona mientras realiza labor de carácter accidental o casual no comprendida dentro del negocio, industria, profesión u ocupación del patrono no es uno cubierto por la Ley de Compensaciones por Accidentes del Trabajo. Art. 2 de la Ley

citada, 11 L.P.R.A. sec. 2; *Arraiza Iglesia* v. *Comisión Industrial*, supra.

En vista de lo anterior, *se revocará la Resolución apelada y la anterior del Administrador del Fondo del Seguro del Estado de 15 de octubre de 1965 y se desestimará la petición presentada en este caso.*

El Juez Asociado, Señor Ramírez Bages, disintió con opinión con la cual concurrió el Juez Presidente Interino, Señor Pérez Pimentel.

—O—

Voto disidente del Juez Asociado Señor Ramírez Bages en el cual concurre el Juez Presidente Interino, Señor Pérez Pimentel

San Juan, Puerto Rico, a 13 de diciembre de 1972

Disiento. La opinión mayoritaria, a los fines de sostener que el recurrente no era un patrono de acuerdo con la Ley de Compensaciones por Accidentes del Trabajo, se ve obligada a descansar en determinados hechos aislados como son (1) el que el recurrente testificó que vivía del Seguro Social; y (2) que se había retirado de la agricultura por lo que cesó de asegurarse con el Fondo del Seguro del Estado. El recurrente dejó de cultivar caña en la finca siendo ésta la razón por la que dejó de asegurarse. Pero aún mantenía la finca como negocio pues recogía el café que producía y mantenía el empleo del fallecido en la tumba anual de los aguacates que los árboles en la finca producían al extremo que días antes del accidente el recurrente había ido a casa del obrero fallecido a pedirle a éste que tumbase dichos aguacates. Además, enfatiza indebidamente un testimonio aislado al efecto de que el fallecido "se daba sus cervecitas" conjuntamente con el informe de un toxicólogo sobre el nivel de alcohol en la sangre del cuerpo del obrero fenecido.

Se trata de lo que se denomina en el derecho común un caso "duro", es decir, un caso en que la parte perdidosa va a sufrir graves consecuencias económicas pues si hubiera prevalecido el criterio de la Comisión, el recurrente se enfrentaría al pago de tal suma que pondría en peligro su finca. Por otra parte, de negársele compensación a la viuda e hijos del fenecido obrero, lo más probable es que éstos quedarían a la merced de la caridad pública.

En armonía con la directriz legislativa de favorecer al obrero en casos como éste, hemos debido confirmar el dictamen de la Comisión Industrial. A continuación relacionamos los fundamentos en que basamos esta conclusión.

La Comisión resume la prueba aducida así:

"1. Que en 29 de agosto de 1965, el Sr. Evangelio Salgado estaba tumbando aguacates con el Sr. Pablo Alvarado en la finca del Dr. Clotilde Hernández cuando se cayó del árbol de aguacates y se lesionó, muriendo horas más tarde en el Hospital.

2. Que el día anterior al accidente don Clotilde había ido a casa del obrero para pedirle que se cogiera los aguacates.

3. Que todos los años el obrero iba a tumbar los aguacates a don Clotilde y se dividían las ganancias por la mitad.

4. Que el obrero anteriormente había trabajado para Don Clotilde recolectando café y tumbando caña.

5. Que el Dr. Clotilde Hernández no tenía póliza con el Fondo del Seguro del Estado que cubriera estos riesgos."

Además, dictaminó la Comisión que:

"Deseamos señalar que en este caso no surgió prueba de índole alguna que afirmativamente probara que el accidente del obrero se debiera a una posible embriaguez. . . . La única prueba que tenemos sobre este particular es el informe médico del Dr. Didney Kaye, del Instituto de Medicina Legal de P.R., sometido como prueba adicional por el abogado del patrono en 9 de octubre de 1970. En el mismo el Dr. Kaye certifica que la autopcia [sic] practicada al obrero fallecido reveló que la sangre contenía un alto por ciento de alcohol y que en su opinión ese contenido de alcohol en la sangre que tenía el obrero revela que estaba 'bajo la influencia del alcohol'. Como dijéramos antes esta

opinión no prueba que el accidente fue causado por la embriaguez del obrero."

En el referido informe sometido por el Director Asociado del Instituto de Medicina Legal de la Escuela de Medicina de la Universidad de Puerto Rico se dice que una muestra de la sangre del obrero fallecido contenía .04% de alcohol por peso al morir; que, en su opinión, si el accidente ocurrió once horas antes (en efecto Salgado sufrió el accidente a eso de las 12 del mediodía. Murió a las once de la noche del mismo día) el nivel de sangre de alcohol al ocurrir el accidente debió ser de 20% a 26% de alcohol por peso lo que colocaría a uno "bajo la influencia del alcohol."

La viuda del fallecido testificó que su marido durante esos días no tomó alcohol y la noche antes se acostaron de 7 a 8 de la noche y cuando ella se levantó a las 7 de la mañana ya su marido se había ido. Un hijo de éste testificó que vio a su padre el domingo y que esa mañana no tomó licor.

No hubo prueba de la causa de la caída del fallecido. Según la Comisión, el único testigo del accidente, Sr. Pablo Alvarado, meramente hizo referencia a que Salgado se cayó de un árbol mientras recogía los aguacates.

Arguye el recurrente que:

". . . no hay prueba alguna en el récord de que la caída se debiera a alguna causa externa y ajena a la voluntad del obrero, como por ejemplo: que se hubiese desgajado una rama del árbol; que hubiese sufrido una enfermedad súbita como un ataque cardíaco; que algún insecto como una avispa, etc. . . . lo hubiese picado; que un fuerte ventarrón hubiese movido súbitamente el árbol, que alguna persona le hubiese lanzado una piedra o en cualquier otra forma le hubiese provocado la caída; que el árbol se hubiese tronchado y caído al piso con el obrero, o a cualquier otro motivo."

La Ley de Compensaciones por Accidentes del Trabajo excluye de sus beneficios ". . . aquellos obreros y empleados cuya labor sea de carácter accidental o causal y no esté com-

prendida dentro del negocio, industria, profesión, u ocupación de su patrono . . . ." Además, dispone que no son accidentes compensables del trabajo y no darán derecho a compensación al obrero o empleado, los que ocurran "(2) Estando el obrero o empleado embriagado, siempre que la embriaguez fuere la causa del accidente." También dispone dicha ley que ". . . por ser de carácter remedial se interpretará liberalmente, y cualquier duda razonable que en su aplicación surgiere en cuanto a la existencia de relación causal entre el trabajo u ocupación del obrero o empleado y la lesión, incapacidad o muerte . . . deberá resolverse a favor del obrero o empleado, o sus beneficiarios." Por último, la referida ley provee que la revisión de una decisión de la Comisión Industrial ". . . solamente podrá concederse sobre cuestiones de derecho o apreciación de prueba, cuando ésta sea de carácter pericial." (11 L.P.R.A. secs. 2, 5 y 12.)

1.—El trabajo de recolectar aguacates que el obrero fallecido realizaba anualmente durante la cosecha en la finca del recurrente no era accidental o casual pues lo había llevado a cabo durante varios años a petición o con la concurrencia del recurrente y éste se beneficiaba del mismo no obstante que el ingreso resultante fuese muy exiguo. Aun cuando fuese casual, el trabajo estaba comprendido dentro del negocio u ocupación del recurrente.

2.—Se ha aducido en este caso la defensa de intoxicación del obrero. Por intoxicación se entiende un estado o condición (a) en que el obrero está bajo la influencia de bebidas intoxicantes al extremo que no está enteramente en sí, su juicio está limitado, o sus actos o palabras o conducta está afectada visible y notoriamente; (b) en que el obrero no puede continuar su trabajo, es decir, que no puede realizar ninguno de los deberes usuales de su empleo. *Fidelity & Casualty Co. of New York* v. *Hodges*, 133 S.E.2d 406 (Ct. of App. Ga. 1963); *Ortega* v. *Ed Horrell & Son*, 362 P.2d 744 (Ariz.

1961); *Fogarty* v. *Martin Hotel Company*, 101 N.W.2d 601 (Minn. 1960).

Para que la anterior defensa pueda prosperar, el patrono tiene que mostrar, por la preponderancia de la prueba, que la lesión del obrero fue ocasionada únicamente por su intoxicación; cuando otros riesgos del empleo concurren con la intoxicación del empleado o contribuyen a ocasionar la caída, no se puede negar la compensación. Tiene que haber una relación causal entre la intoxicación y la lesión resultante. La prueba de los patrones de conducta de individuos bajo la influencia del alcohol debe provenir de peritos médicos y no de toxicólogos. *Olivera* v. *Hatco Chemical Co.*, 150 A.2d 781, 788, 790 (N.J. App. Div. 1959); *Douglas Aircraft Co.* v. *Industrial Accident Com'n.*, 306 P.2d 425 (Cal. 1957); *Allison* v. *Brown & Horsch Insulation Co.*, 102 A.2d 493, 497 (N.H. 1954); *Kulinka* v. *Flockhart Foundry Co.*, 75 A.2d 557, confirmado en *Bujalski* v. *Flockhart Foundry Co.*, 84 A.2d 468 (N.J. 1951).

Si bien es cierto que hubo prueba pericial de que había determinado contenido de alcohol en la sangre del fenecido, no es menos cierto que, como indica la Comisión, no hubo prueba de que esa condición fuese la causa del accidente. Según la relación de la prueba contenida en la resolución de la Comisión, al único testigo presencial del accidente no se interrogó sobre cómo y en qué forma ocurrió el accidente y sobre la causa del mismo. Por el contrario, dicho testigo testificó que cuando el obrero se cayó del árbol "habían cogido como 150 aguacates", además de 100 del primer árbol y que "quedaban por coger como 50 aguacates" del segundo árbol; que el obrero se cayó "como a las dos horas de estar cogiendo aguacates." Este testimonio no es indicativo de que el obrero fallecido estuviese impedido de continuar su trabajo o de realizar los deberes usuales de su empleo. Tampoco hubo prueba de que su juicio estuviere limitado o de que sus actos,

palabras o conducta estuviese afectado visible y notoria-
mente.

En vista de lo expuesto, hemos debido confirmar la resolu-
ción de la Comisión Industrial dictada en este caso en 4 de
marzo de 1971.