Antonio Pagán Ramos, recurrente, *v.* Fondo del Seguro del Estado, recurrido.

*Número:* CI-91-312 *Resuelto:* 31 de enero de 1992

892

*Osvaldo Ortiz Medina,* abogado del recurrente; *Calixto Juval Rivera,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico de 1988, ¿aplica a los procedimientos de la Comisión Industrial de Puerto Rico (Comisión Industrial)? Esta interrogante surge en el recurso en que el Sr. Antonio Pagán Ramos cuestiona la decisión de la Comisión Industrial de que era un patrono no asegurado. Su contestación requiere examinar particularmente el alcance de dicha ley en las agencias cuyas decisiones son revisadas *directamente* por este Tribunal.

I

Con el propósito de abrir una zanja e instalar una acometida para suplir agua a su residencia, localizada en los

altos de su negocio de panadería, Pagán Ramos fue al cementerio municipal para averiguar si alguno de los excavadores podía hacerle el trabajo. Habló con el sepulturero municipal y éste acordó con los Sres. Fabio Báez Pagán y Félix Castro, que por cuenta propia lo harían después de concluir sus trabajos en el cementerio.

A esos efectos, entre las 9:00 y 9:30 A.M., el sepulturero los llevó a la panadería y uno de los empleados de Pagán Ramos les indicó dónde tenían que excavar. El sepulturero regresó al cementerio y ellos comenzaron a romper el pavimento de la carretera. Después de trabajar por alrededor de hora y media, Báez Pagán sintió un fuerte dolor, "se agarró el pecho ... cayendo arrodillado y luego de boca en la zanja donde estaba trabajando". Apéndice I, pág. 12. Su compañero lo llevó a un hospital cercano y fue trasladado en ambulancia al Centro Médico de la región de Mayagüez, donde falleció de "ataque cardíaco agudo del miocardio".

Por la tarde, otra persona contratada por Pagán Ramos concluyó la excavación y, posteriormente, la Autoridad de Acueductos y Alcantarillados instaló el tubo que conectó el contador.

Inicialmente, ante los reclamos de la viuda del obrero muerto, Pagán Ramos se negó a informar el accidente al Fondo del Seguro del Estado (Fondo), y señaló que el obrero fallecido no había trabajado. Luego de la investigación correspondiente, el Administrador del Fondo del Seguro del Estado (Administrador) concluyó que Pagán Ramos era patrono no asegurado y el obrero muerto su empleado. Pagán Ramos apeló a la Comisión Industrial. Previa vista, el 23 de abril de 1991 la comisión notificó su decisión confirmatoria.

El 1ro de mayo Pagán Ramos solicitó reconsideración. La Comisión Industrial *no actuó*. Entonces, el 20 de mayo Pagán Ramos acudió ante nos en revisión. Sostiene que el obrero que falleció estaba realizando una labor accidental o casual no comprendida dentro de su negocio de panadería,

lo cual lo eximía de la obligación de asegurarse bajo la Ley de Compensaciones por Accidentes del Trabajo.

Concedimos al Administrador un término para que mostrara causa por la cual no debíamos revocar porque "al momento del accidente en este caso el obrero fallecido estaba realizando una labor accidental o casual no comprendida dentro del negocio o industria del patrono, lo cual eximía a éste de su obligación de asegurarse en virtud de la excepción dispuesta por el artículo dos (2) de la Ley de Compensaciones a Obreros por Accidentes del Trabajo". Orden de 14 de junio de 1991.

En su comparecencia, el Administrador sostiene que no tenemos jurisdicción porque el recurso nos fue presentado antes de que la Comisión Industrial resolviese la moción de reconsideración. Dirijimos nuestra atención al estado procesal del caso.

## II

La Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*) estableció un procedimiento administrativo uniforme para el Estado Libre Asociado y derogó la única ley de procedimientos que existía en Puerto Rico: la Ley sobre Reglamentos de 1958. El propósito de la Ley de Procedimiento Administrativo Uniforme (en adelante Ley Núm. 170) fue fijar un cuerpo de reglas mínimas que proveyeran uniformidad al proceso decisorio de la administración pública:

La medida sistematiza y crea un cuerpo uniforme de reglas mínimas que toda agencia deberá observar al formular reglas y reglamentos que definan los derechos y deberes legales de una clase particular de personas. Contiene, además, otro cuerpo de normas distintas para gobernar las determinaciones de una agencia en procesos adjudicativos al emitir una orden o resolución que define los derechos y deberes legales de personas específicas. Exposición de Motivos de la Ley Núm. 170 de 12 de agosto de 1988, Leyes de Puerto Rico, pág. 825. Véase, también,

Informe Conjunto de las Comisiones de Gobierno Estatal, Asuntos Municipales y de lo Jurídico sobre el P. del S. 350, abril de 1987.

■ Del historial legislativo se desprende que su aprobación fue producto de un largo proceso y de una intensa discusión que comenzó en 1968, en la que participaron representantes tanto del Gobierno como de las facultades de derecho y entidades privadas. Inspirada en la experiencia en Estados Unidos con la Ley de Procedimiento Administrativo federal (*Administrative Procedure Act* (A.P.A.)) desde 1946, la Ley Núm. 170 acogió muchas de las doctrinas de A.P.A. También tomó en consideración el desarrollo del derecho administrativo en el foro federal y en los estatales, y la experiencia de algunos estados con el *Model State Administrative Procedures Act*. Véase Informe Conjunto, *supra*.

Por último, partiendo de la premisa de que la jurisprudencia de nuestros tribunales fijaba el contenido jurídico de las reglas fundamentales del derecho administrativo, también codifica esas normas.

■ Su ámbito es abarcador: "se aplicará a *todos* los procedimientos administrativos conducidos ante *todas* las agencias que no estén expresamente exceptuad[a]s por [esta ley]." (Énfasis suplido.) 3 L.P.R.A. sec. 2103. La ley también aclara que un procedimiento administrativo incluye la formulación de reglas y reglamentos y "la adjudicación formal de toda controversia o planteamiento ante la consideración de una agencia"; además, comprende los procedimientos de otorgación de licencias y "cualquier proceso investigativo que inicie una agencia dentro del ámbito de su autoridad legal". 3 L.P.R.A. sec. 2102(k).

■ Al definir el término "agencia", la Asamblea Legislativa utilizó su acepción más dilatada para incluir "cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división,

administración, negociado, departamento, autoridad, funcionario, persona, entidad o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u *organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias ... acusar o adjudicar ...*". (Énfasis suplido.) 3 L.P.R.A. sec. 2102(a). Véanse: J. Berkan, *La nueva Ley de Procedimiento Administrativo Uniforme de Puerto Rico: una comparación con "Administrative Procedure Act"*, Facultad de Derecho, U.I.A., 1989, pág. 1; Ley Núm. 18 de 30 de noviembre de 1990.

■ Esta definición guarda similaridad con la utilizada por los tratadistas más reconocidos en derecho administrativo. A modo de ejemplo, Davis define una agencia como un "organismo o entidad gubernamental que no es una corte o un cuerpo legislativo, y que afecta los derechos de partes privadas mediante la adjudicación o la reglamentación". (Traducción nuestra.) 1 *Davis, Administrative Law Treatise* Sec. 1.2, pág. 9 (1978). Véase, también, A.E. Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process*, 60 (Núm. 4) Iowa L. Rev. 731, 759–771 (1975).

■ Conforme a los términos del estatuto, todos los organismos gubernamentales autorizados por ley a "reglamentar, investigar ... acusar o adjudicar" (3 L.P.R.A. sec. 2102(a)) están incluidos. También incluye a los funcionarios o personas que tengan estas facultades delegadas por ley. Véase A.G. Hermida, *La Ley de Procedimiento Administrativo Uniforme de 1988, y las Reglas para la Revisión Judicial de 1989: algunos aspectos de especial interés para los jueces*, 5 (Núm. 2) Forum 16–17 (1989).

■ Por otro lado, el estatuto expresamente excluye de la definición de agencia y, por ende, de la aplicación de la

ley a la Asamblea Legislativa, a la Rama Judicial y a los municipios o sus entidades o corporaciones. También exceptúa a la Oficina Propia del Gobernador, a la Guardia Nacional de Puerto Rico, a la Comisión Estatal de Elecciones y al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. 3 L.P.R.A. sec. 2102(a).

■ Recientemente, la Asamblea Legislativa evaluó la experiencia del Gobierno de Puerto Rico con la implantación de esta ley a la luz del informe de la comisión nombrada por el Gobernador para estudiar los problemas surgidos en la Rama Ejecutiva al implantar la Ley Núm. 170. Primer Informe de la Comisión para la Implantación de la Ley 170 de 12 de agosto de 1988, Departamento de Justicia. Examinadas sus recomendaciones, la Asamblea Legislativa aprobó unas enmiendas mediante la Ley Núm. 43 de 5 de agosto de 1989 y la Ley Núm. 18 de 30 de noviembre de 1990. En lo referente a las exclusiones, solamente se modificó la de la Asamblea Legislativa, para exceptuar únicamente al Senado y a la Cámara de Representantes, y se excluyó, además, la Comisión para la Celebración del Quinto Centenario del Descubrimiento de América y de Puerto Rico. También, simultáneamente, se modificó la Sec. 1.4 de la ley para excluir las funciones investigativas y de procedimiento criminal que realizan el Departamento de Justicia, el Negociado de Investigaciones Especiales y la Policía de Puerto Rico. Véase Art. 2 de la Ley Núm. 18 de 30 de noviembre de 1990 (3 L.P.R.A. sec. 2103).

■ Al aprobar estas enmiendas, la Asamblea Legislativa reafirmó que su intención era establecer un código de derecho administrativo con un cuerpo mínimo de reglas uniformes "cuyos efectos alcanzan a *toda la operación de la Rama Ejecutiva del Gobierno* y afecta a toda la ciudadanía". (Énfasis suplido.) Informe de la Comisión de

Gobierno de la Cámara de Representantes sobre el P. de la C. 1120 de 23 de octubre de 1990, pág. 4. También ratificó que su intención era excluir de su alcance solamente un pequeño número de entidades expresamente identificadas en el estatuto.

En cuanto a la técnica de exposición legislativa, según la premisa de que existían multiplicidad de agencias y procedimientos cubiertos por la ley, el estatuto se dividió en siete (7) áreas principales, numeradas y denominadas "capítulos". Excepto el primer capítulo —disposiciones generales— los restantes proveen unos procedimientos uniformes mínimos que se desplazan sobre las distintas funciones realizadas por las agencias. Su fórmula legislativa está concebida en función de los procedimientos administrativos incluidos y toma en consideración las características individuales de cada uno de éstos. La Ley Núm. 170 provee un procedimiento uniforme mínimo para cada una de las funciones que se describen separadamente en el orden siguiente:

Capítulo I – Disposiciones Generales
Capítulo II – Procedimiento para la Reglamentación
Capítulo III – Procedimientos Adjudicativos
Capítulo IV – Revisión Judicial
Capítulo V – Procedimiento para la Concesión de Licencias, Franquicias o Permisos
Capítulo VI – Fiscalización e Inspección y Gestiones Conjuntas
Capítulo VII – Penalidades Administrativas
Capítulo VIII – Disposiciones Suplementarias

La ley sustituye los procedimientos de las agencias que sean incompatibles con sus disposiciones y, en cuanto a los procedimientos no provistos por el estatuto, dispone que

las agencias deberán reglamentar su práctica conforme a las disposiciones.

■ Recientemente, en *Hernández v. Golden Tower Dev. Corp.*, 125 D.P.R. 744 (1990), reconocimos la importancia de este nuevo ordenamiento y concluimos que generalmente sus reglas "prevale[cerían] sobre toda disposición legal, relativa a una agencia en particular, que sea contraria a las disposiciones de la misma". (Énfasis suprimido.) Por ende, con este nuevo ordenamiento se sustituyeron los procedimientos que tenían cada una de las agencias con un cuerpo uniforme de reglas mínimas para la formulación de reglamentos, la adjudicación formal de controversias y la otorgación de licencias, permisos o concesiones. La Ley Núm. 170 distingue las distintas funciones de las agencias y provee un cuerpo uniforme de procedimientos mínimos para cada una.

■ Aclarado el alcance de la Ley Núm. 170, es evidente su aplicación a la Comisión Industrial. Este organismo es de carácter apelativo con poderes adjudicativos otorgados por la Ley de Compensaciones por Accidentes del Trabajo; *no está expresamente excluido* del alcance de la ley. En estas circunstancias, veamos cuál es el trámite procesal aplicable al procedimiento adjudicativo formal de las apelaciones presentadas a la Comisión Industrial.

### III

■ Conforme a este ordenamiento, cuando una agencia tiene que adjudicar formalmente una controversia, los procedimientos se regirán por el Subcapítulo III:

Cuando por disposición de una ley, regla o reglamento o de este Capítulo una agencia deba adjudicar formalmente una controversia, los procedimientos deberán regirse por las disposiciones de este subcapítulo. No estarán incluidos los procedi-

mientos voluntarios de resolución de disputas establecidos por ley o por reglamentos. 3 L.P.R.A. sec. 2151.

La medida claramente dispone que este capítulo será de aplicación en todos aquellos procedimientos en que una agencia deba adjudicar formalmente una controversia. En esta parte se incorporan unas salvaguardas procesales mínimas, que incluye derecho a la notificación oportuna de los cargos y el de presentar evidencia ante un examinador imparcial. También se requiere que la decisión esté fundada en el expediente oficial. 3 L.P.R.A. sec. 2151. Además, exige que todas las agencias con poderes adjudicativos adopten un reglamento para regular sus procedimientos conforme con los términos de la Ley Núm. 170 (3 L.P.R.A. sec. 2152).

La Sec. 3.15 de la Ley Núm. 170 (3 L.P.R.A. sec. 2165) dispone que una parte adversamente afectada por una decisión parcial o final de una agencia tiene un término de veinte (20) días, contados desde la notificación de la resolución, para presentar una reconsideración. El estatuto provee que la moción de reconsideración es de carácter jurisdiccional y restringe el término que tiene una agencia para considerarla.

La presentación en tiempo de una moción de reconsideración interrumpe el término para acudir en revisión a los tribunales. Si se rechaza de plano o no se actúa dentro del término de quince (15) días, la parte afectada podrá solicitar revisión judicial. En otras palabras, ese trámite sigue como modelo procesal las Reglas de Procedimiento Civil. Se establece que se deniega de plano una moción de reconsideración si dentro del término establecido no se actúa afirmativamente para considerarla. Transcurrido dicho término sin actuación alguna, se entenderá que la misma ha sido denegada de plano, adviniendo final dicha decisión. La parte afectada tiene entonces la opción de solicitar revisión judicial o aceptar el dictamen

administrativo. De solicitar revisión judicial, el término para presentar el recurso "comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso". 3 L.P.R.A. sec. 2165.

La Ley Núm. 170 también limita a noventa (90) días el término que tienen las agencias para resolver los méritos de las reconsideraciones. De no tomar alguna acción con relación a la moción de reconsideración dentro de esos noventa (90) días, las agencias pierden jurisdicción sobre el asunto y la decisión original adviene final y firme, a menos que la parte solicite revisión dentro de los treinta (30) días siguientes a la expiración de los noventa (90) días. Véase Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 232, 9 de febrero de 1989. Solamente mediante autorización judicial y "por justa causa" se puede prorrogar "por un tiempo razonable" ese término. 3 L.P.R.A. sec. 2165.

## IV

En cuanto a la revisión judicial, el Subcapítulo IV dispone un procedimiento aplicable a "aquellas órdenes, resoluciones y providencias dictadas por agencias o funcionarios administrativos que *deban o puedan ser revisadas por el Tribunal Superior* de Puerto Rico". (Énfasis suplido.) 3 L.P.R.A. sec. 2171.([1]) Por sus propios términos, este sub-

---

([1]) Mientras el caso de autos estaba ante nuestra consideración, la Asamblea Legislativa aprobó la Ley Núm. 92 de 5 de diciembre de 1991 para enmendar la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico (Ley de la Judicatura). En su Exposición de Motivos se afirma que "de conformidad con la política pública de la Ley de Procedimiento Administrativo Uniforme, Núm. 170 de 12 de agosto de 1988, según enmendada, es conveniente una completa uniformidad del procedimiento para la revisión judicial de las decisiones administrativas, por lo que se transfiere al Tribunal Superior la competencia para revisar aquellas decisiones administrativas que todavía se revisan directamente ante el Tribunal Supremo, con la excepción de las decisiones de los Registradores de la Propiedad". 1991 Leyes de Puerto Rico 848, 849. En particular, el Art. 2 que enmienda la Sec. 7 de la Ley de la Judicatura

capítulo es *únicamente aplicable a las decisiones de una agencia que "deban o puedan ser revisadas por el Tribunal Superior ...".* Íd. No se extendió a aquellos casos en que la ley habilitadora estableció otro procedimiento de revisión judicial. Según su historial legislativo, "significa que si la ley orgánica requiere que otro organismo administrativo apelativo revise la orden o resolución deberá agotarse dicho recurso, así como los casos en que la propia ley dispone que la revisión se haga por el Tribunal Supremo, no será necesario acudir al Tribunal Superior". Informe Conjunto, *supra,* pág. 10.

De esta manera, el legislador expresamente dispuso que, en lo referente a la revisión judicial, el Capítulo IV no tuvo el efecto de concederle jurisdicción al Tribunal Superior cuando una ley habilitadora provee un procedimiento apelativo ante otro foro. No obstante, esto no implica que las otras partes de la ley, que están concebidas para regular otros procedimientos administrativos, sean inaplicables. En conclusión, conforme con la fórmula legislativa de la Ley Núm. 170, su Capítulo IV es inaplicable a las revisiones jurídicas de las órdenes o resoluciones que por disposición de ley no son revisables por el Tribunal Superior.

Aquí, la Comisión Industrial adjudicó formalmente la apelación del patrono y notificó su decisión el 23 de abril de 1991. Bajo los términos de la Sec. 3.15 de la Ley Núm. 170, *supra,* la parte adversamente afectada tenía

dispone: "El Tribunal Supremo, cada una de sus salas, así como cualquiera de sus jueces, pueden conocer en primera instancia de recursos de hábeas corpus y *de aquellos otros recursos y causas que se determinen por ley".* (Énfasis suplido.) Íd., pág. 851. Esta ley entró en vigor treinta (30) días después de su aprobación.

Como la Ley Núm. 92, *supra,* fue aprobada después de la presentación del recurso de autos, ésta no pone fin a la controversia planteada ante nos sobre la aplicación de los términos dispuestos por la Sec. 3.15 de la Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2165) a los recursos pendientes de reconsideración ante la Comisión Industrial antes de su aprobación. Por ende, el asunto no es académico.

veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución para presentar una moción de reconsideración. El 1ro de mayo de 1991 Pagán Ramos solicitó reconsideración y su escrito fue oportunamente presentado, y tuvo el efecto de interrumpir automáticamente el término para solicitar la revisión judicial.

 Para la fecha en que se resolvió la apelación, las enmiendas a la ley estaban en vigor. *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 127 D.P.R. 864 (1990). Conforme a la Sec. 3.15 de la Ley Núm. 170, *supra,* la Comisión Industrial tenía quince (15) días para actuar sobre la reconsideración. Como no lo hizo dentro de ese término, se consideró rechazada de plano y el término para solicitar revisión comenzó nuevamente desde que expiraron los quince (15) días.

 Al amparo del Art. 11 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 12, Pagán Ramos tenía quince (15) días para solicitar revisión ante este Tribunal. En vista de que su solicitud de revisión fue oportunamente presentada, tenemos jurisdicción. Aclaradas estas interrogantes de naturaleza procesal, examinemos si el obrero fallecido era su empleado según la Ley de Compensaciones por Accidentes del Trabajo.

## VI

En su recurso, el peticionario sostiene que el obrero fallecido no era un empleado según la definición de la Ley de Compensaciones por Accidentes del Trabajo. Fundamenta su posición en que los Arts. 2 y 38 de la ley expresamente exceptúan de esa legislación social "aquellos obreros y empleados cuya labor sea de carácter accidental o causal y no esté comprendida dentro del negocio, industria, profesión u ocupación de su patrono ...". 11 L.P.R.A. sec. 2. Véase, además, 11 L.P.R.A. sec. 39.

En *Arraiza Iglesia v. Comisión Industrial*, 85 D.P.R. 14, 17 (1962), ratificando a *Romero v. Comisión Industrial*, 73 D.P.R. 805 (1952), "señalamos que la cuestión a determinarse es si la labor es casual, no si el obrero o empleado es casual, o sea, si ésta ocurre sin regularidad, ocasional o incidentalmente ...". Allí enumeramos los elementos que deben ser considerados al determinar si la labor es casual: (1) el período de duración del trabajo; (2) el costo que representa para el patrono; (3) la naturaleza de la labor realizada, y (4) su relación con el negocio o industria del patrono. Véase *Vda. de Alfonzi v. Comisión Industrial*, 93 D.P.R. 822, 824 (1966).

En el caso de autos, de las propias determinaciones de hecho de la Comisión Industrial se desprende que el obrero fallecido realizaba una tarea de naturaleza casual y ajena al negocio de panadería de Pagán Ramos. El obrero trabajaba regularmente en el cementerio municipal en tareas de mantenimiento y excavación de tumbas. Fue contratado por Pagán Ramos sólo para hacer una zanja frente a su negocio-residencia para instalar una acometida de agua al hogar que recientemente había remodelado. El período de duración de la labor de excavación de la zanja era corto, de varias horas. El obrero no tenía relación de clase alguna con la panadería de Pagán Ramos. Esa labor de carácter accidental o casual no está comprendida dentro del negocio a que regularmente se dedica Pagán Ramos para efectos de la Ley de Compensaciones por Accidentes del Trabajo. Por tal razón, el obrero no era "empleado" de Pagán Ramos para efectos de este caso. Véase *Hernández López v. Comisión Industrial*, 100 D.P.R. 1001 (1972).

*Se expide el auto y se revoca resolución de la Comisión Industrial y la del Administrador del Fondo del Seguro del Estado.*

El Juez Asociado Señor Rebollo López emitió una opi-

nión disidente. El Juez Asociado Señor Negrón García se inhibió.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Nos vemos imposibilitados de endosar con nuestro voto la Opinión mayoritaria emitida por el Tribunal. La misma contraviene una norma jurisprudencial firmemente establecida en nuestra jurisdicción.

## I

Como correctamente se expresa en la Opinión mayoritaria emitida, el *propósito* de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico —Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*), en adelante Ley 170— fue reglamentar, de una manera uniforme, los procedimientos que se llevan a cabo en las distintas agencias administrativas del Gobierno de Puerto Rico. La definición, que del término "agencia" contiene la Sec. 1.3 de la citada Ley 170,[1] es una sumamente amplia. De hecho, dicha definición es tan amplia que prácticamente cobija a todas y cada una de las agencias administrativas gubernamentales existentes hoy día en Puerto Rico.

Basándose en ello, y en el hecho de que la Comisión Industrial de Puerto Rico (Comisión Industrial) no es una de las agencias *específicamente* excluidas en la citada Ley 170, la mayoría de los integrantes del Tribunal concluye que "es evidente" que la referida Ley 170 es de "aplicación a la Comisión Industrial". Opinión mayoritaria, pág. 902.

---

[1] 3 L.P.R.A. sec. 2102.

Al así resolver, la mayoría del Tribunal pasa por alto el hecho importante de que la *propia* Ley 170 *excluye* de sus disposiciones, *de una forma indirecta,* a la citada Comisión Industrial al establecer, en su Sec. 4.1,(²) que las disposiciones de la misma únicamente serán aplicables a "aquellas órdenes, resoluciones y providencias *dictadas por* agencias o funcionarios administrativos que *deban o puedan ser revisadas* por el *Tribunal Superior* de Puerto Rico ...". (Énfasis suplido.)

Como es sabido, y conforme las disposiciones de la ley orgánica de la Comisión Industrial, las decisiones que emite esta agencia administrativa *son revisables directamente* ante el *Tribunal Supremo* de Puerto Rico. Ese hecho, *por sí solo,* remueve a la Comisión Industrial del ámbito de la citada Ley 170.

Con el propósito, hasta cierto punto incomprensible, de evadir esa realidad jurídica, la mayoría de los integrantes del Tribunal —*sin citar fundamento jurídico alguno en apoyo de su acción*— resuelven que *parte* de la referida Ley 170 es aplicable a la Comisión Industrial y *parte* de la misma no lo es. En consecuencia, la mayoría dispone —*por fíat judicial*— que son de aplicación a los procedimientos que se lleven a cabo ante dicha Comisión Industrial las disposiciones de la Sec. 3.15 de la Ley 170 (3 L.P.R.A. sec. 2165),(³) pero que, por el contrario, *no* le es de aplicación a

---

(²) 3 L.P.R.A. sec. 2171.

(³) La sec. 2165 del Título 3 de L.P.R.A. establece:

"*2165.— Reconsideración*

"La parte adversamente afectada por una resolución, u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción cuya resolución deberá ser emitida y archi-

la Comisión Industrial las secciones de la citada Ley 170 correspondientes al procedimiento de revisión judicial. Esto es, para efectos de la aplicación de la Ley 170, conforme resuelve una mayoría de los integrantes del Tribunal, la Comisión Industrial *era* una agencia administrativa "híbrida".(⁴)

Al así actuar, naturalmente, el Tribunal ignora una norma que *reiteradamente*, hemos ratificado a través de los años; esto es, la sabia y jurídicamente correcta norma a los efectos de que al interpretar una ley no debemos tomar aisladamente, y por separado, cada uno de sus párrafos, secciones o incisos sino que venimos obligados a considerar todas sus disposiciones en conjunto. *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 90 (1983); *Delgado v. D.S.C.A.*, 114 D.P.R. 177, 182 (1983); *Rocafort v. Álvarez*, 112 D.P.R. 563, 571 (1982); *Sales v. Samac Motor Corp.*, 92 D.P.R. 529, 540 (1965); *Central Aguirre Sugar v. Srio. Hacienda*, 91 D.P.R. 340, 347 (1964); *Figueroa v. Díaz*, 75 D.P.R. 163, 171 (1953).

En resumen, la *conclusión errónea* a la que llega la mayoría de los integrantes del Tribunal —esto es, de que la Ley 170 es *parcialmente aplicable* a la Comisión Industrial— es *consecuencia directa* de una lectura e interpretación *fraccionada, aislada y separada* de las disposiciones

vada en autos dentro de los noventa (90) días siguientes a la radicación de la moción. Si la agencia dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los noventa (90) días de haber sido radicada una moción acogida para resolución, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que el tribunal, por justa causa, autorice a la agencia una prórroga para resolver, por un tiempo razonable.

"La moción de reconsideración será jurisdiccional para poder solicitar la revisión judicial."

(⁴) Como se señala en el esc. 1 de la Opinión mayoritaria emitida, mediante la Ley Núm. 92 de 5 de diciembre de 1991 y en lo pertinente, la Asamblea Legislativa enmendó la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico para disponer que las decisiones finales de la Comisión Industrial de Puerto Rico serán revisadas por el Tribunal Superior.

Ello, ni hace académico el caso de autos, ni subsana el error cometido por la Mayoría al emitir la presente decisión.

de la citada Ley 170, lo cual, conforme la norma jurisprudencial antes señalada, resulta ser improcedente en derecho.

Es por ello que disentimos.