# 2009 DTA 129

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

MAPFRE PRAICO INSURANCE COMPANY
Recurrente

v.

DEPARTAMENTO DE HACIENDA DE PUERTO RICO
Recurrida

**ADMIRAL INSURANCE COMPANY**
Parte con interés

Núm. KLRA-2009-00809

San Juan, Puerto Rico, a 17 de septiembre de 2009

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Salas Soler y la Juez Colom García

Colom García, Jueza Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos MAPFRE PRAICO INSURANCE COMPANY, (MAPFRE) mediante una solicitud de revisión y una moción en auxilio de jurisdicción. En la primera, solicita que revoquemos y dejemos sin efecto la adjudicación a Admiral Insurance Company (ADMIRAL) de la contratación del Seguro de Responsabilidad Pública de los municipios de Puerto Rico de fecha 30 de junio de 2009. En la segunda, solicitó detener y retener el pago de la prima del contrato en controversia y ordenar no emitir pago alguno en lo que se dilucida el presente caso. Accedimos a ello el 6 de agosto de 2009.

Por los fundamentos que expondremos a continuación, se *revoca* la determinación del Departamento de Hacienda (Hacienda).

**I**

Conforme surge del recurso, para el período de 30 de junio del 2008 al 30 de junio de 2009, ADMIRAL fue el asegurador del riesgo de responsabilidad pública de los Municipios de Puerto Rico bajo la póliza #BRSDADM-0001-08. Para la renovación del mencionado seguro durante el período comprendido entre el **1 de julio de 2009 al 30 de junio de 2010**, Hacienda seleccionó la firma de corredores de seguro Marsh Saldaña (Marsh) para asistirle en la obtención y cotización de la póliza de riesgo de responsabilidad pública de los municipios. También escogió el proceso de solicitud de propuestas provisto en el Reglamento Num. 29 del Departamento de Hacienda sobre *Contratación y Reclamación de las Fianzas y Seguros del Estado Libre Asociado de Puerto Rico,* del 16 de octubre del 2001.

MAPFRE y ADMIRAL fueron los únicos dos (2) licitadores que comparecieron a la invitación de Marsh a presentar propuestas para la póliza. Oportunamente, MAPFRE presentó su propuesta, cotizó el límite agregado solicitado de quince (15) millones por la prima anual de **$15,180,000**. Por su parte, ADMIRAL cotizó el mismo limite agregado de quince (15) millones por una prima de **$15,377,671.00.**

El 30 de junio de 2009, el Área de Seguros Públicos de Hacienda decidió adjudicar el contrato a ADMIRAL. Dicha determinación fue notificada a Marsh y a ADMIRAL, mas no a MAPFRE. A las 6:30p.m. del mismo día —fecha en que vencía la cubierta de la póliza vigente para los Municipios—, el corredor remitió un correo electrónico al Sr. Raúl Costilla y al Sr. Joaquín Castrillo, Presidente y Vicepresidente Ejecutivo de MAPFRE, respectivamente, indicando que recomendó elegir la propuesta de ADMIRAL para la renovación del seguro. Dicha recomendación se fundamentó en que, a pesar de que la propuesta de MAPFRE es más económica para los municipios y tiene una proyección de costos más baja en la tramitación de las reclamaciones, ADMIRAL ofreció combinar los límites agregados para los años 2005 a 2008, de manera que la insuficiencia de unos años se pudiera compensar con excesos de otros.

El 1 de julio de 2009, MAPFRE emitió una comunicación al Secretario de Hacienda y al Comisionado de Seguros exponiendo las razones por las cuales no debía ser acogida la recomendación de Marsh. Al no recibir respuesta, el 10 de julio de 2009, MAPFRE cursó una segunda carta requiriendo notificación de la adjudicación

y advirtiendo en torno a las obligaciones de notificación, conforme a la Ley de Procedimiento Administrativo Uniforme (LPAU).

El 22 de julio de 2009, se recibió en las oficinas de MAPFRE un fax de la Oficina de Seguros con una copia de la carta de adjudicación de fecha 30 de junio de 2009. El 30 de julio de 2009, los representantes de MAPFRE solicitaron acceso al expediente administrativo, y el 3 de agosto de 2009, asistieron al Área de Seguros Públicos de Hacienda a examinar el mismo.

Inconforme, MAPFRE instó el presente recurso de revisión administrativa, en el que plantea que Hacienda incidió en los siguientes errores:

"1. Erró el Departamento de Hacienda al no proveer notificación adecuada de la decisión administrativa de adjudicar el contrato a ADMIRAL incumpliendo orden previa de este Tribunal a esos efectos en el caso American International y la LAPAU con lo cual la compareciente está exenta del término legal para solicitar Revisión Judicial, y la determinación administrativa tomada y el contrato otorgado, carecen de efecto legal y deben anularse.

2. Erró el Departamento de Hacienda como cuestión de derecho al adjudicar la contratación a ADMIRAL por cuanto la condición bajo la cual se ofrece el límite agregado combinado, constituye un incentivo ilegal definido como rebaja ilegal sobre primas prohibido en el Código de Seguros, por lo que debe anularse la cubierta ofrecida y/o contrato si es que ya se hubiese otorgado.

3. Erró el Departamento de Hacienda al adjudicar la contratación a ADMIRAL basado en el criterio único de enmendar retroactivamente las pólizas anteriores para establecer un límite agregado, por cuanto: i) se trata de una contratación de seguro no incluido en el proceso de negociación iniciado bajo el Reglamento 29; y ii) aun de haber sido susceptible de ser negociado en este proceso, la condición imposible de cumplir por ningún otro asegurador proponente que no sea el asegurador incúmbete en la cuenta, frustrando con ello el fin de la competencia de propuestas que requiere el Reglamento 29.

4. Aun en la Alternativa de que se considere válida, como cuestión de derecho, la condición decisiva de la propuesta referente al límite agregado combinado, erró el Departamento de Hacienda al adjudicar el contrato a ADMIRAL por cuanto la evidencia del historial de reclamaciones y gastos del expediente administrativo y que fue provista a MAPFRE, no sostiene y más aún, desmiente la idoneidad de dicha propuesta.

5. Erró el Departamento de Hacienda como cuestión de derecho al adjudicar la contratación a ADMIRAL por cuanto al cotizar el riesgo MAPFRE, asegurador de líneas excedentes cuyas primas son más altas contrario a los mejores intereses del gobierno."

Con el beneficio de la exposición de ambas partes, disponemos.

## II

De entrada, el Departamento de Hacienda y ADMIRAL impugnan la expedición del Auxilio de Jurisdicción emitido por este Tribunal, el pasado 6 de agosto de 2009. Ambos fundamentan su razón de pedir en la ausencia de notificación de la solicitud en auxilio por parte de MAPFRE. Rechazamos esa interpretación. Las órdenes en auxilio de jurisdicción se rigen por lo dispuesto en la Regla 79 del Reglamento del Tribunal de Apelaciones, específicamente en su inciso (c), el cual autoriza su expedición a iniciativa del propio Tribunal.

Ahora bien, pasemos a la discusión de los errores planteados. Atendida la estrecha co-relación entre los señalamientos de error, procedemos a consolidarlos para su disposición.

· El Tribunal Supremo ha expresado la importancia que reviste para la buena marcha de la cosa pública, que los procesos de adquisición de bienes y servicios del Gobierno se lleven a cabo con eficiencia, honestidad y completa probidad. *R&B Power v. E.L.A.,* res. el 20 de marzo de 2007, 170 D.P.R. ___ (2007), **2007 J.T.S. 56**; *Empresas Toledo v. Junta,* res. en 31 de agosto de 2006, 168 D.P.R 771 (2006), **2006 J.T.S. 147**; *A.E.E. v. Maxon,* 163 D.P.R. 434 (2004); *RBR Cosnt., S.E. v. Autoridad de Carreteras,* 149 D.P.R. 836 (1999).

Con el propósito de reglamentar los procedimientos administrativos del Estado Libre Asociado de Puerto Rico, se promulgó la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico", como cuerpo de reglas mínimas para gobernar de manera uniforme los procesos de adjudicación y reglamentación pública. *R&B Power v. E.L.A., supra; Perfect Cleaning v. Cardiovascular,* res. el 18 de septiembre de 2007, 172 D.P.R. ___ (2007), **2007 J.T.S. 172**; *Asoc. de Dueños Casas Parguera v. Junta de Planificación,* 148 D.P.R. 307 (1999); *Pagán Ramos v. F.S.E.,* 129 D.P.R. 888 (1992). En relación a los procedimientos administrativos para la adjudicación de bienes y servicios, la Ley Núm. 170, *supra,* solamente uniformó el procedimiento de reconsideración de la adjudicación de la buena pro ante la agencia y la revisión judicial de la orden o resolución final de la entidad gubernamental en tal respecto. 3 L.P.R.A. secs. 2151, 2169 y 2172. Véase, además, *R&B Power v. E.L.A., supra; Perfect Cleaning v. Cardiovascular, supra.*

A falta de legislación especial, queda a la discreción de cada agencia gubernamental, utilizando su conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir para la adquisición competitiva de bienes y servicios. *R&B Power v. E.L.A., supra; L.P.C. & D., Inc. v. A.C.T.,* 149 D. P.R. 869, 875 (1999); *RBR Construction v. A.C.T., supra.* En relación a esto, el Tribunal Supremo explicó que "[e]l objetivo de la reglamentación establecida deberá ser promover la mayor competencia en las proposiciones recibidas, de suerte que el Estado tenga a su disposición el mayor número de alternativas posible y de entre éstas, escoger la que más le beneficie desde el punto de vista de precio y calidad." *R&B Power v. E.L.A., supra,* a la pág. 183. También, la reglamentación procura evitar la colusión, el favoritismo o el fraude en la adjudicación de subastas. *R&B Power v. E.L.A., supra; Empresas Toledo v. Junta, supra; A.E.E. v. Maxon, supra; L.P.C. & D., Inc. v. A.C.T., supra.*

Por otro lado, el Tribunal Supremo ha aclarado que, de ordinario, en la adquisición competitiva de bienes y servicios por el Gobierno se debe utilizar el mecanismo de la subasta pública, formal o tradicional. ("A primary method of contracting that employs competitive bids,... is 'sealed bidding'. This has been traditional for public bodies.") *R&B Power v. E.L.A., supra,* a la pág. 1083, citando a W. N. Keyes, *Government Contract,* West Publishing Co., Minnesota, 1986, sec. 14.1, pág. 152. Para lo cual, cada entidad gubernamental promulga su propio reglamento. *R&B Power v. E.L.A., supra.*

Sobre el particular, el Tribunal Supremo, en el caso *R&B Power v. E.L.A., supra,* a las págs. 1083-1084, expresó lo siguiente:

"En términos generales, el procedimiento de subasta formal consta de varias etapas, a saber: la preparación por parte del ente gubernamental de los pliegos de condiciones y especificaciones, el aviso de subasta al público, el recibo y posterior apertura pública de las propuestas selladas recibidas, la evaluación y estudio de las mismas por un comité evaluador, la recomendación del comité respecto la adjudicación de la buena pro, la adjudicación de ésta y la notificación a todos los licitadores. Una vez sometidos los pliegos de licitación y abiertos éstos, los mismos no admiten modificaciones. La apertura de los pliegos de licitación se efectúa públicamente ante todos los licitadores. No hay cabida en este proceso para la negociación de los términos sometidos entre agencia y licitador"

De otra parte, el RFP, o requerimiento de propuesta, es otro mecanismo disponible al Gobierno para adquirir bienes y servicios. **Su característica sobresaliente es que admite negociación.** J. McBride, T.

Touhay, *Government Contracts, Cyclopedic Guide to Law, Administration, Procedure*, Lexis-Nexis, 2007 (sup), Vol. 1-B, sec. 9.20[3], págs. 9-10. (*"Requests for proposals (RFP's) are used in negotiated procurements to communicate the government's requirements to prospective contractors and to solicit proposal."*) El RFP, es, ante todo, un mecanismo de compra negociada." (Énfasis y bastardillas en el original.)

Frecuentemente se recurre a éste cuando se trata de la adquisición de bienes o servicios especializados, que involucran asuntos altamente técnicos y complejos o cuando existen escasos competidores cualificados. Véase, Comment, *Request for Proposals in State Government Procurements*, 130 *U.Pa.L.Rev.* 179, 181 (1981) (*"Competitive negotiation is generally employed by the government to purchase sophisticated technology that is produced by a limited number o suppliers and cannot be readily defined by precise specifications."*). (Bastardillas en el original.)

En el requerimiento de propuestas se deben enumerar los requisitos y factores que se utilizarán para la adjudicación del contrato en cuestión y a los cuales todo licitador tiene que ser responsivo. Habitualmente se le adjudica un valor o peso a los factores que se van a considerar al adjudicar la buena pro. El documento describe cómo se llevará a cabo el proceso, incluyendo el itinerario para recibir, evaluar y adjudicar la buena pro y los términos del contrato que se otorgará. Y como ya indicamos, este mecanismo admite la negociación entre el oferente y la entidad gubernamental mientras se evalúan las propuestas recibidas. De ordinario, este hecho se hace constar en el documento en sí. (Cita omitida.).

En ese mismo caso, el Tribunal Supremo aclaró las diferencias entre la subasta formal y el proceso de requerimiento de propuestas señalando lo siguiente:

*"By definition, any contract awarded without using sealed bidding procedures is a negotiated contract...* **[U]nlike sealed bidding negotiation is a 'procedure that includes the receipt of proposals from offerors, permits bargaining, and usually affords offerors an opportunity to revise their offers before award of contract'.**" Keyes, *op. cit.*, sec. 15.3, pág. 197. (Énfasis y bastardillas en el original.)

De lo anterior se desprende con meridiana claridad que el mecanismo de requerimiento de propuestas se destaca por su mayor informalidad y flexibilidad, así como por el grado de discreción que se le confiere a la entidad pública en la consideración de la propuesta recibida, en comparación con la subasta tradicional. Sigue siendo éste, sin embargo, un mecanismo alterno para la adquisición de bienes y servicios en el Gobierno, y como tal, necesariamente, participa de alguna de las características de la subasta formal.

"[. . . . . . . .]

Cabe destacar que, aun cuando el RFP se configura como un procedimiento más informal que el de una subasta, no se le puede negar a quienes participan en la licitación y cuyas propuestas fueron rechazadas, el derecho a cuestionar la decisión de la agencia mediante la revisión judicial de ésta. Ello así, aun cuando el documento mismo de licitación, el RFP, nada disponga respecto el derecho de revisión judicial. Partimos de la premisa al así disponer, que existe una presunción a favor de la revisión judicial de las decisiones administrativas...."

Después de todo, este mecanismo alterno a la subasta formal, participa de características adjudicativas de la misma forma que la subasta tradicional. En vista de ello, son de clara aplicación los principios generales establecidos en la Sec. 3.16 de la LPAU., 3 L.P.R.A. sec. 2166, que exige que cuando: *'la agencia concluye . . . un procedimiento adjudicativo en un caso particular,. . . notificará por escrito, por correo certificado con acuse de recibo a las partes su determinación, los fundamentos para la misma y el recurso de revisión disponible.'* (Citas omitidas.) (Énfasis y bastardillas en el original.) *R&B Power v. E.L.A., supra*, a las págs. 1084-1085.

Dentro del marco jurídico antes enunciado, procedemos a resolver la controversia de autos.

El Departamento de Hacienda, a través de su corredor de seguros Marsh, solicitó propuestas para el Programa de Seguros de Responsabilidad Civil de los municipios para el año fiscal 2009-2010. Marsh hizo una presentación a las dos compañías participantes en el proceso, a saber ADMIRAL y MAPFRE. En ella, delimitó el pliego de especificaciones de la propuesta, que sin margen a otra interpretación, es para el período comprendido entre el 30 de junio de 2009 y el 30 de junio de 2010, exclusivamente. Recibidas las propuestas, Marsh presentó su recomendación a Hacienda, quien adjudicó conforme a ella. Posteriormente, la única comunicación que recibió MAPFRE de Marsh fue un correo electrónico, **[1]** enviado el 30 de junio de 2009 a las 6:30p.m., **[2]** y otra comunicación, el 22 de julio de 2009, **[3]** indicando que, luego de revisar las propuestas, se recomendó la hecha por ADMIRAL.

Surge del expediente que MAPFRE envió una comunicación el 1 de julio de 2009 a la Directora del Área de Seguros Públicos con copia al Secretario de Hacienda y al Comisionado de Instituciones Financieras, exponiendo las razones por las cuales no debían acogerse las recomendaciones del corredor y, en su lugar, contratar a MAPFRE. No obstante, MAPFRE no recibió respuesta alguna de dicha carta ni notificación oficial alguna hasta el 22 de julio de 2009 a las 4:00p.m., cuando recibió un fax de la Oficina de Seguros. **[4]**

Lo medular de esta controversia es determinar si la adjudicación de la póliza de seguros de responsabilidad pública para los municipios para el período futuro comprendido entre el 1 de febrero de 2009 y el 3 de junio de 2010 puede descansar exclusivamente en una condición especial que no fue parte del pliego de especificaciones, a saber, **que el límite agregado de cubierta para períodos anteriores sea el total de agregados contratados desde el primer periodo de póliza de uno de los licitadores**, que ADMIRAL unilateralmente añadió a su oferta, cuando dicha licitación también excede por $197,671.00 la oferta de MAPFRE que cumple con la cubierta subastada.

El Reglamento Núm. 29, *supra,* de Hacienda, establece que en toda convocatoria se especificará la condición especial si la hubiese. El "Insurance Specifications" que gobierna esta subasta nada señala respecto a agrupar los agregados de años fiscales anteriores. Tampoco ello se incluyó en la comunicación de Marsh de fecha 17 de junio de 2009, donde se estableció a MAPFRE y a ADMIRAL la fecha límite para aceptar cotizaciones.

Por ello, Hacienda no podía, como efectivamente lo hizo, sustituir en valor ni en peso, las especificaciones de lo requisado en subasta para aceptar en la propuesta de ADMIRAL un elemento nuevo presentado en su licitación particular. Ello da al traste con el proceso de licitación en la medida en que se subasta un producto específico y se adjudica a favor de otro con diferentes características. Aun sin entrar a evaluar el factor costo-beneficio para los municipios, el daño que tal proceder inyecta al proceso de adquisición por pública licitación, de cara al futuro es de tal magnitud que obliga nuestra intervención en salvaguarda del proceso de licitación al que antes aquí nos hemos referido *in extenso*.

La evaluación de las cotizaciones presentadas por ADMIRAL y MAPFRE debe atenerse, en términos de condiciones de cubierta, a lo especificado en el "Insurance Specification" y en los costos anuales. La aplicación rigurosa de las normas y reglamentos es esencial cuando se trata del desembolso de fondos públicos y se enfatiza su manejo prudente. *De Jesús González v. A.C.,* 148 D.P.R. 255 (1999). Con ese lente, también evaluamos ambas propuestas.

Claramente vemos que la licitación de MAPFRE representa un ahorro de $197,671.00, en cuanto a la cubierta subastada, por lo que debió adjudicársele a MAPFRE la subasta. Si algún beneficio representa para los municipios "…combinar los límites agregados para los años 2005 a 2008, de manera que la insuficiencia de unos años se pudiera compensar con excesos de otros", es tema que no podemos evaluar en el récord y en este proceso costaría a los municipios $197,671.00 extra. En conclusión, se cometieron los errores segundo, tercero y cuarto.

A la luz·de lo anterior, es inmaterial la discusión del primer error. Además, MAPFRE presentó su reclamo ante este foro oportunamente. La notificación, aunque informal, le permitió a MAPFRE, como licitador no favorecido, impugnar razonable y responsablemente los méritos de la adjudicación. Igualmente nos pudo presentar como foro revisor la causa del expediente que nos permite la adjudicación dentro del ámbito del debido proceso de ley.

## Dictamen

Por los fundamentos expresados, se revoca la determinación del Secretario de Hacienda. Se adjudica la *buena pro* de la propuesta de seguro de responsabilidad pública de los municipios de Puerto Rico para el período comprendido entre 1 de julio de 2009 al 30 de junio de 2010, a la recurrente MAPFRE.

Notifíquese de inmediato por correo ordinario.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2009 DTA 129**

**1.** Apéndice IX, a las pág. 305-306.

**2.** Fecha en que vencía la cubierta de la póliza vigente en ese momento.

**3.** Apéndice I, a las págs. 2-5.

**4.** Pasados 22 días de la adjudicación de la póliza y 21 días de la carta de impugnación.